**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

USMAN ROSHAN,

          Plaintiff,

          v.

NEW JERSEY INSTITUTE OF
TECHNOLOGY,

          Defendant.

Case No. 2:24-cv-10933 (BRM)(MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court is Defendant New Jersey Institute of Technology's ("NJIT") Motion to

Dismiss *pro se* Plaintiff Dr. Usman Roshan's ("Plaintiff") Complaint (ECF No. 5) for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). (ECF No. 17.) On March 3, 2025,

Plaintiff filed a response in opposition to NJIT's Motion. (ECF No. 19.) NJIT filed a reply brief in

response to Plaintiff's opposition (ECF No. 20), after which Plaintiff filed a sur-reply (ECF No.

21). Having reviewed and considered the submissions filed in connection with the Motion and

having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the

reasons set forth below and for good cause having been shown, NJIT's Motion is **GRANTED.**

## I.    BACKGROUND

      For purposes of this Motion, the Court accepts the factual allegations in the Complaint as

true and draws all inferences in the light most favorable to Plaintiff. *See Philips v. Cnty. of*

*Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to*

*or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Given Plaintiff is proceeding *pro se*, the Court attempts to glean factual allegations and legal claims through liberal construction of the Complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("[W]e hold [the *pro se* complaint] to less stringent standards than formal pleadings drafted by lawyers"); *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005) ("[*P*]*ro se* pleadings must be liberally construed"); *Cooke v. Experian Info. Sols., Inc.*, Civ. A. No. 22-05375, 2024 WL 1142214, at *2 (D.N.J. Mar. 15, 2024) (same); *Huff v. Atl. Cnty. Just. Facility*, Civ. A. No. 20-9761, 2021 WL 307303, at *2 (D.N.J. Jan. 29, 2021) ("Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making."). The Court also refers to NJIT's moving papers to fill in facts missing from the Complaint. Nevertheless, the Court relies on the factual allegations in the Complaint and draws all inferences in Plaintiff's favor.

**A. Factual Allegations**

NJIT is a public university located in Newark, New Jersey. (ECF No. 5 ¶ 8.) Plaintiff is an associate professor of Data Science at NJIT, where he has been employed since 2004, and a resident of New Jersey. (*Id.* ¶ 7; ECF No. 17-1 at 3.)  While employed at NJIT, Plaintiff alleges he developed a new Machine Learning graduate course in 2013, known as "CS 675," on his own initiative and without utilizing NJIT's resources.[1] (ECF No. 5 ¶¶ 1–2.) CS 675 became extremely popular with both undergraduate and graduate students and attracted cross-enrollment from the

---

[1] NJIT's copyright policy states that faculty members retain total ownership over course material that they create unless they used significant university resources in developing the material or they are bound by contractual or research terms bearing upon this ownership. (ECF No. 5-2, Ex. C.)

Rutgers University Newark campus. (*Id.* ¶ 2.) Plaintiff alleges CS 675 was the genesis of a Master of Data Science degree offered by NJIT within its new Data Science Department in 2017, which Plaintiff helped create. (*Id.*) Plaintiff registered the Spring 2020 version of his CS 675 "syllabus, lecture slides, notes, assignments, projects, and exams" with the United States Copyright Office (the "Copyright Office") on May 8, 2024. (ECF No. 5-2, Ex. E (the "Certificate of Registration").) The Certificate of Registration lists the date of first publication as January 15, 2020. (*Id.*)

Plaintiff alleges that in 2020, he noticed an adjunct professor was using his course material to teach a section of CS 675. (*Id.* ¶ 33; ECF No. 5-2, Ex. N.) On February 17, 2020, Plaintiff contacted NJIT administrators via email to "expres[s] copyright concerns" over the use of the CS 675 materials by this adjunct professor (the "February 2020 Email"). (*Id.*). Although they acknowledged that "faculty own copyrights of their course and that it would be [a] violation of copyright law to copy another professor's course without permission," the administrators did not propose any action to address the alleged copying. (*Id.*)

Starting in September 2021 through May 2023, Plaintiff went on family medical leave from his NJIT role (the "September 2021 Leave"). (ECF No. 5 ¶¶ 4, 10.) Plaintiff alleges that during the September 2021 Leave, "NJIT produced an online machine learning graduate course called 'Online DS 675 Machine Learning' [("DS 675")] that is almost identical to his machine learning graduate course, secured copyrights to the online course, and offered it to a broad online audience" without his knowledge or consent. (*Id.*) Plaintiff expressed interest in teaching a section of DS 675 in the upcoming semester via email on February 13, 2024 (the "February 2024 Email"). (*Id.* ¶ 25; ECF No. 5-2, Exs. I & D.) In a response the same day, NJIT administrator Brook Wu informed Plaintiff he could not teach an online DS 675 section because fellow computer science faculty

member Yiannis Koutis ("Koutis") had developed the course,[2] giving him the right of first refusal for it, despite Plaintiff's claim he "made [the] course in 2013" and that DS 675 appeared to infringe on his copyright. (ECF No. 5-2, Ex. I.) Subsequently, Plaintiff had a conversation with the Head of Online Programs at NJIT's Ying Wu College of Computing ("YWCC"), David Ullman ("Ullman"), about the assignment of DS 675 to Koutis, which was then memorialized through an email Ullman sent on April 1, 2024.[3] (*Id.*; ECF No. 5-2, Ex. D.) Ullman's email indicated NJIT had selected Koutis to design DS 675. (*Id.*)

Plaintiff alleges, based on a side-by-side comparison of the materials for CS 675 and DS 675, that the syllabi, modules, organization, assignments, and conceptual expressions for the two courses are nearly identical, and share more with each other than with course materials from machine learning courses taught at other universities. (ECF Nos. 5 ¶¶ 12–21; 5-2, Ex. H.) Plaintiff contends "[t]he online course has all the qualities of [Plaintiff's] course: his original contributions in the same expression, his formulas and diagrams, his syllabus, his assignments, and the same order of topics as in his syllabus and in his lectures." (ECF No. 5 ¶ 19.) Plaintiff also alleges his CS 675 "lecture slides and notes" were "freely available online," and his exam problems "were accessible to [Koutis] via PhD Qualifying Exam committees on which both him and [Plaintiff]

---

[2] Plaintiff does not name Koutis directly in the Complaint but refers to him as the "faculty member" (ECF No. 5 ¶¶ 10, 13, 20, 25–26, 29–31) or, in one case, "Yiannis" (*id.* ¶ 25). Several of Plaintiff's allegations discussing the "faculty member" refer to emails attached as exhibits, where Koutis's name appears. (*Id.* ¶¶ 25, 29–31.) Given the liberal construction afforded *pro se* plaintiffs, the Court will interpret the Complaint's allegations as referring to Koutis where appropriate. *See, e.g.*, *Gennarini*, 144 F. App'x at 926.

[3] The Complaint states this email was when Plaintiff "discovered" the creation of DS 675 and its infringing nature, but other allegations and the attached copy of the February 2024 Email indicate Plaintiff was aware of the potentially infringing nature of DS 675 as of February 13, 2024. Given the liberal construction afforded *pro se* plaintiffs, the Court will interpret the Complaint as alleging Plaintiff discovered this instance of infringement on February 13, 2024. *See, e.g.*, *Gennarini*, 144 F. App'x at 926.

served." (*Id.* ¶ 13.) As a result, Plaintiff alleges the similarity between CS 675 and DS 675 "is not coincidental." (*Id.* ¶ 22.) Additionally, Plaintiff contends he has a more significant background in working on, researching, and teaching machine learning than Koutis, implying Koutis would be unlikely to create course materials with such a high degree of similarity independently. (*Id.* ¶¶ 22–23.) Plaintiff alleges this infringement was willful because NJIT was motivated to profit on the novelty and popularity of Plaintiff's CS 675 course. (*Id.* ¶¶ 32–33.)

When Plaintiff confronted Koutis about the similarities between the CS 675 and DS 675 course materials, Koutis stated YWCC Dean Craig Gotsman[4] ("Gotsman") had asked him to teach a section of CS 675 in person using the "approved syllabus" in 2020, and, sometime in 2021, he was asked "to design the official online CS675" based on the in-person course. (*Id.* ¶ 31.) Plaintiff also alleges he shared his comparison between the CS 675 and DS 675 course materials with various members of the NJIT faculty, administration, and counsel, none of whom denied the DS 675 materials infringed on the CS 675 materials. (*Id.* ¶ 34.) Nonetheless, Plaintiff alleges NJIT failed to address this alleged infringement in a manner that vindicates his rights. (*Id.*)

Plaintiff brings causes of action for copyright infringement, concealment of infringement, and willful criminal infringement. (*Id.* ¶¶ 10–35.) Plaintiff requests monetary relief in the form of compensatory, "aggravated," and punitive damages, and equitable relief in the form of prospective royalty fees on future instances of DS 675 and a "permanen[t]" teaching load including year-round sections of DS 675. (*Id.* Prayer for Relief.)

---

[4] Like with Koutis, the Complaint obliquely references Gotsman (ECF No. 20 at 8) as "Craig" (ECF No. 5 ¶ 31) and refers to Plaintiff's attempts to discuss this matter with "the the former Interim YWCC Dean, the new and current YWCC Dean," one of whom the Court presumes is Gotsman (*id.* ¶ 34).

## B. Procedural History

Plaintiff initially sued NJIT on December 5, 2024. (ECF No. 1.) Plaintiff then filed a corrected version of the Complaint on December 9, 2024. (ECF No. 5.) NJIT filed this Motion on February 18, 2025. (ECF No. 17.) On March 3, 2025, Plaintiff filed a response in opposition (ECF No. 19), to which NJIT replied on March 10, 2025 (ECF No. 20). Plaintiff also filed a sur-reply on March 13, 2025. (ECF No. 21.)

On April 14, 2025, NJIT sought a stay of discovery pending resolution of the Motion, which was granted on May 21, 2025. (ECF Nos. 26, 30.) Plaintiff moved for reconsideration of the stay on May 27, 2025 (ECF No. 35), which NJIT opposed on June 23, 2025 (ECF No. 45.) The Court, Hon. Michael A. Hammer, U.S.M.J., denied the motion for reconsideration on June 30, 2025. (ECF No. 46.)

While the motion for reconsideration was pending, Plaintiff filed a motion and letter accusing NJIT of spoliation of evidence and moving the Court to deny the Motion on June 9, 2025. (ECF Nos. 41, 42.) The Court administratively terminated Plaintiff's motion as improper on June 10, 2025, but stated it would consider the substance of Plaintiff's filing as supplemental briefing on the Motion. (ECF No. 43.) The Court invited NJIT to file a response by June 17, 2025, which it did. (*Id.*; ECF No. 44.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However,

"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

The pleadings of *pro se* plaintiffs are liberally construed. *Haines*, 404 U.S. at 520. Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DECISION

NJIT argues Plaintiff's claims must be dismissed on a number of grounds. As a threshold matter, NJIT proffers two arguments concerning the enforceability of Plaintiff's copyright. (ECF

No. 17.) NJIT contends the copyright is invalid, and is therefore unable to support an infringement claim, because Plaintiff fraudulently misrepresented the publication date of the CS 675 course material in his registration application as January 15, 2020, whereas his Complaint asserts that it was in fact in 2013. (*Id.* at 10–12.) NJIT also argues the three-year statute of limitations for copyright claims expired long before Plaintiff filed his December 5, 2024 Complaint. (*Id.* at 12–16.) Even if his copyright is valid and his claims are timely, NJIT contends the Complaint should be dismissed for failure to state an actionable, plausible infringement claim and because any copying of CS 675 constituted educational fair use. (*Id.* at 16–36.) Regarding Plaintiff's concealment and criminal infringement claims, NJIT contends the former is not a stand-alone claim and fails the pleading requirements of Federal Rule of Civil Procedure 9(b), and the latter is not an avenue available to Plaintiff in a civil proceeding. (*Id.* at 36–38.) Finally, NJIT takes issue with Plaintiff's requested relief because it asserts Plaintiff makes no legitimate allegation of actual damages, and punitive damages are unavailable in a copyright action. (*See id.* at 38–39.)

Because NJIT's copyright invalidity and statute of limitations arguments both have the potential to foreclose Plaintiff's claims, the Court addresses them first.

### A. Fraudulent Copyright Registration

NJIT contends Plaintiff cannot bring claims for copyright infringement because he "committed fraud upon the Copyright Office in his application," rendering his Certificate of Registration invalid. (ECF No, 17 at 10–11.) Asserting that "[a] registrant commits fraud on the Copyright Office when he makes false representations of fact with the requisite intent to defraud," NJIT argues Plaintiff falsely listed "the date of first publication" for the CS 675 course materials as January 15, 2020, when the Complaint alleges he first used those materials in 2013. (*Id.* at 11 (citing *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 558

(D. Md. 2013); *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639, 643–44 (S.D.N.Y. 1992); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3rd Cir. 1990)).) Therefore, NJIT contends Plaintiff "deliberately misrepresented the first use date in his application to the Copyright Office so that he would be able to falsely claim the presumption of validity" and argues his claims should be dismissed. (*Id.* at 12.)

Plaintiff refutes that he fraudulently obtained the Certificate of Registration. (ECF No. 19.) He argues his copyright and related causes of action relate solely to the CS 675 course materials for a section of the course he taught in the spring of 2020 (the "Spring 2020 Version"). (ECF No. 19 at 6.) He asserts this is evidenced in the Certificate of Registration's title, "Usman Roshan CS 675 Spring 2020," as well as a copy of the fall 2013 course outline for CS 675 attached to his opposition (the "Fall 2013 Version"). (*Id.* at 6–7.) Plaintiff also attached "the full set of materials submitted to the U.S. Copyright Office." (*Id.* at 7.) Moreover, Plaintiff argues NJIT's view of which date must be listed as the publication date to avoid misrepresentation would be equivalent to penalizing an author who copyrighted the final draft of her book instead of registering the first draft. (*Id.*) In his sur-reply, Plaintiff also asserts NJIT's view contradicts guidance from the Copyright Office that creators should register "the 'best edition' of a work." (ECF No. 21 at 2.)

In reply, NJIT argues that, even if only the Spring 2020 Version is covered by the registration, the Complaint makes clear the Spring 2020 Version is a derivative of the Fall 2013 Version. (ECF No. 20 at 2.) As such, NJIT asserts Plaintiff was obligated to identify the Fall 2013 Version and its date of publication in his application, which he purposefully failed to do. (*Id.* at 2–3.) NJIT also contends the result does not change if the Spring 2020 Version is "a compilation or collective work" because Plaintiff would still be required to list the preexisting work. (*Id.* at 3–4.)

NJIT argues Plaintiff's shifting allegations are "an effort to improperly claim the benefit of the presumption of validity" that warrant dismissal. (*Id.* at 4.)

"[T]he first step in establishing a claim of copyright infringement requires the plaintiff to show ownership of the copyright in question." *Beom Su Lee v. Karaoke*, Civ. A. No. 18-8633, 2019 WL 2537932, at *5 (D.N.J. June 19, 2019). "[W]here a plaintiff has produced a valid copyright certificate which was obtained within five years of the date when the work was first published," the copyright is presumed valid. *Id.*; *see also Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984) ("[A] timely obtained Copyright Office certificate of registration . . . 'constitute[s] prima facie evidence of the validity of the copyright[.]'" (third alteration in original) (quoting 17 U.S.C. § 410(c))); *accord Masquerade*, 912 F.2d at 667.

However, the Third Circuit has held "a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." *Masquerade*, 912 F.2d at 668. In other words, the plaintiff must have intentionally withheld information material to copyrightability from the Copyright Office for the Court to determine the registration does not support an infringement claim. *See id.* (determining failure to disclose information indicating articles functioned as costumes was not material because application identified articles as "nose masks," so the "Copyright Office had the information necessary to determine whether to register" them); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455–56 (2d Cir. 1989) (affirming grant of summary judgment for defendant because plaintiff purposefully represented its costume designs were "soft sculptures with no useful function as wearable articles" despite understanding that "clothes, as useful articles, are not copyrightable," in order to obtain copyright registration); *Raquel v. Educ. Mgmt. Corp.*, 196 F.3d 171, 178–80 (3d

Cir. 1999) (finding plaintiff's misidentification of "the *nature* of the work in such a way as to suggest an attempted registration in a work not authored by the registrant" constituted knowing misstatement based on record evidence), *cert. granted, judgment vacated on other grounds*, 531 U.S. 952, (2000); *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 232 (3d Cir. 2010) (affirming jury verdict for copyright infringement and rejecting defendants' argument there was insufficient evidence of copyright validity due to fraud because "[t]here is no evidence that Mon Cheri knowingly or intentionally omitted" information about derivative nature of work).

Courts in this Circuit have found misrepresentations of dates in copyright registration to be immaterial, and "it is not clear that even knowing misrepresentations can void a copyright registration where the Register has not relied on them." *Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94, 96 (3d Cir. 2005) (vacating summary judgment because work in dispute "would have been copyrightable regardless of when it was created and published"); *see also Mortg. Mkt. Guide, LLC v. Freedman Rep., LLC*, Civ. A. No. 06-140, 2008 WL 2991570, at *17–19 (D.N.J. July 28, 2008) (finding, following bench trial, plaintiff's failure to include "title and nation in which the work was created" in initial application and erroneous publication dates cured via supplemental amendment were immaterial). Further, when a defendant raises issues of copyright validity on a motion to dismiss, the Court "will not interpret the complaint in the light most favorable to the moving defendants," but must instead do the opposite. *Beom Su Lee*, 2019 WL 2537932 at *6–7 (denying motion to dismiss for invalid registration because complaint alleged proper publication date for registration and integrated documents appeared properly executed, and defendants' "[p]roofs to the contrary are not properly considered at this stage").

NJIT is correct that Plaintiff alleges he first created the CS 675 course materials in 2013 but listed the initial publication date as January 15, 2020. (ECF No. 5 ¶ 2; ECF No. 5-2, Ex. E.)

While courts in this Circuit have generally considered erroneous publication dates to be immaterial, none of these cases have involved pleadings which admitted a potentially earlier publication date. *See Gallup*, 149 F. App'x at 94 (noting plaintiff filed supplementary registration to correct publication date); *Mortg. Mkt.*, 2008 WL 2991570 at *19 (same); *Beom Su Lee*, 2019 WL 2537932 at *6–7 (finding complaint and registration "plausibly allege" publication date). However, contrary to what NJIT contends, the Third Circuit has also held that omitting information about the derivative nature of the work to be registered is not material, "as the Copyright Office grants copyrights for derivative work." *Mon Cheri Bridals*, 383 F. App'x at 232. Given this is a motion to dismiss, and Plaintiff is *pro se*, the Court is inclined not to read the Complaint to admit a material misrepresentation as a matter of law. *See, e.g.*, *Gennarini*, 144 F. App'x at 926.

Nonetheless, the Court need not resolve whether the publication date error was material at this stage because there are no allegations in the Complaint and integrated materials that show Plaintiff had the requisite intent. NJIT points to Plaintiff's references to the Fall 2013 Version and concludes the use of January 15, 2020, on the Certificate of Registration incontrovertibly demonstrates a fraudulent intent. (ECF Nos. 17 at 11–12, 20 at 2–3.) This is too far a leap for the Court to accept based on attorney argument alone, particularly at the pleading stage. *Accord Beom Su Lee*, 2019 WL 2537932 at *6 ("The Court will not interpret the complaint in the light most favorable to the moving defendants at this stage[.]"). Perhaps, through further factual development, NJIT could demonstrate Plaintiff acted with deceptive intent, but there is no basis to make this conclusion on the face of the Complaint. *See id.*; *Phillips*, 515 F.3d at 228. The Court will not dismiss the Complaint on this basis.

### B.  Statute of Limitations

NJIT argues that, even assuming Plaintiff lawfully obtained his copyright, Plaintiff's claims are time-barred under the three-year statute of limitations for copyright infringement. (ECF No. 17-1 at 12.) NJIT contends the accrual of Plaintiff's claim "must be evaluated as of December 6, 2021," because Plaintiff filed the Complaint on December 5, 2024. (*Id.* at 13.) Although NJIT acknowledges the discovery rule, which tolls the statute of limitations until a plaintiff discovers or reasonably should have discovered their injury, applies to instances of copyright infringement, it contends Plaintiff's purported 2024 "discovery of alleged infringement . . .  is conclusively refuted by other allegations in and another exhibit to the complaint." (*See id.* at 13–14.) Since the February 2020 Email shows Plaintiff was aware of the possibility NJIT, through an adjunct professor, had infringed his copyright on February 17, 2020, NJIT argues he "should have been on alert that his initial February 2020 copyright infringement concern may well be a continuing problem," especially because his September 2021 Leave coincided with the end of COVID-19 pandemic and the university's increased reliance on online teaching. (*Id.* at 14–15.) NJIT therefore asserts the limitations period had fully run by February 17, 2023, or at latest September 2024 (three years after the beginning of the September 2021 Leave). (*Id.* at 16.)

In response, Plaintiff acknowledges he noted the appearance of infringement as early as February 17, 2020, but contends his claim relates only to the alleged infringement in 2024. (ECF No. 19 at 8.) Plaintiff distinguishes the copyright concerns he raised in the February 2020 Email from those in the February 2024 Email, asserting only the latter is relevant to the running of the limitations period. (*Id.*) Additionally, Plaintiff argues the Supreme Court's decision in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024), eliminated the three-year statute of limitations for copyright infringement claims when it determined there was no three-year limitation on

recovery of damages if an infringement suit is timely brought. (*Id.*) Plaintiff also asserts he could not have reasonably known NJIT would copy his CS 675 materials to create DS 675, nor did anyone contact him during the September 2021 Leave to inform him NJIT was creating DS 675 and intended to use his CS 675 course materials to do so, making the February 2024 Email the first time he could have discovered the alleged infringement. (*Id.* at 8–9.) In his sur-reply, Plaintiff also argues the February 2020 Email related to "another person" (the adjunct professor) using the CS 675 course materials, whereas the alleged infringement in 2024 was perpetrated by Koutis on behalf of NJIT. (ECF No. 21 at 2–3.)

In reply, NJIT disputes Plaintiff's reading of *Warner Chappell*, arguing the Supreme Court decided only "that the three-year statute of limitations for bringing a copyright infringement claim does not impose a corresponding three-year limit on damages" but did not "modify or abolish the three-year period for pursuing such a claim." (ECF No. 20 at 4 (citing *Warner Chappell Music*, 601 U.S. at 372).) Moreover, NJIT argues Plaintiff's opposition concedes NJIT had the authority to assign anyone to teach online version of CS 675 and the decision to create an online version took place in September 2021. (*Id.* at 5.) Based on this knowledge and the February 2020 Email, NJIT contends Plaintiff had enough information to do his due diligence during the September 2021 Leave to identify potential copyright infringement by the DS 675 course materials. (*Id.* at 5–6.)

The statute of limitations is an affirmative defense typically pled in an answer rather than a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Therefore, dismissing a complaint pursuant to a 12(b)(6) motion on statute-of-limitations grounds requires that it is clear from the face of the complaint the plaintiff's claims are untimely. *Id.*; *see also Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("[If an affirmative defense] is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule

15

12(b)(6).")." If a complaint's allegations, attached exhibits, or matters of public record do not show an obvious timeliness bar to the plaintiff's relief when taken on their own, the motion to dismiss must be denied. *See Schmidt*, 770 F.3d at 249.

Generally, the statute of limitations begins to run upon a cause of action's accrual, which is "the moment at which each of [the action's] component elements has come into being as a matter of objective reality." *William A. Graham Co. v. Haughey* ("*Graham II*"), 646 F.3d 138, 150 (3d Cir. 2011). For copyright infringement actions, the statute of limitations is three years, commencing "when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014); *see also* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). But the formalism of accrual is tempered in the Third Circuit by the discovery rule, a "legal precep[t] that operate[s] to toll the running of the limitations period after a cause of action has accrued[.]" *Graham II*, 646 F.3d at 150. The discovery rule tolls the statute of limitations until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."[5] *William A. Graham Co. v. Haughey* ("*Graham I*"), 568 F.3d 425, 438 (3d Cir. 2009) (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008)).

When a plaintiff alleges continuing instances of copyright infringement, "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief," known as the separate-accrual rule. *Id.* at 433 (quoting *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992)); *see also Petrella*, 572 U.S. at 671 (quoting same). Under the separate-accrual rule, the statute of limitations runs separately for each individual violation of a law that forbids a discrete wrong. *Id.*

---

[5] In *Graham II*, the Third Circuit clarified that the discovery rule serves an equitable tolling function of an already-accrued claim, rather than postponing the accrual of a cause of action, as the language of *Graham I* implied. *Graham II*, 646 F.3d at 150.

Therefore, "each infringing act starts a new limitations period," rather than continuing the period begun by a prior act of infringement. *Petrella*, 572 U.S. at 671. As such, when faced with multiple instances of alleged copyright infringement, a court must assess where each infringing act falls within its own three-year limitations period.[6] *See, e.g., id.*; *Graham I*, 568 F.3d at 433 (noting District Court correctly held plaintiff "was not time-barred from recovering for any acts of infringement that occurred on or after [three years prior to filing], regardless of whether the injury or discovery rule applies"); *Krist v. Scholastic, Inc.*, 415 F. Supp. 3d 514, 530–31 (E.D. Pa. 2019) ("[E]ach infringing act is its own copyright claim . . . subject to its own calculation of the statute of limitations."); *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 449 (E.D. Pa. 2015) (finding some of plaintiff's claims timely because each failure of defendant to pay recurrent royalty fee initiated separate three-year limitations period).

Here, the Complaint alleges two discrete instances of infringement: (1) an adjunct professor's alleged appropriation of the CS 675 course material, which prompted Plaintiff to express concerns of infringement to NJIT administrators in the February 2020 Email (ECF No. 5 ¶ 33; ECF No. 5-2, Ex. N); and (2) Koutis's alleged copying of the CS 675 course material in developing DS 675 sometime in 2021, of which Plaintiff became aware through the February 2024 Email (ECF No. 5 ¶ 31). Although NJIT asserts both instances are essentially the same infringing

---

[6] Plaintiff is incorrect in drawing from *Warner Chappell* that the Supreme Court abolished any statute of limitations on copyright infringement. There, the Supreme Court examined "whether, under the discovery accrual rule applied by the circuit courts, a copyright plaintiff can recover damages for acts that allegedly occurred more than three years before the filing of a lawsuit." *Warner Chappell*, 601 U.S. at 371 (cleaned up). The Supreme Court's holding was therefore cabined to whether the statute of limitations curtails a plaintiff's ability to recover damages when the discovery rule tolled the limitations period for the underlying claim and found it does not. *Id.* at 372–74. The Supreme Court expressly did not rule on the propriety of the discovery rule as applied in certain Courts of Appeals (including the Third Circuit) and, in fact, implicitly affirmed that the statute of limitations for Copyright Act claims is three years. *Id.*

act, the Court disagrees. As alleged, the class in 2020 was taught by an unnamed adjunct professor, and its format (online versus in-person) is not specified. (ECF No. 5 ¶ 33; ECF No. 5-2, Ex. N.) In contrast, DS 675 was developed and taught by Koutis in an online format at least a year later. (ECF No. 5 ¶ 31.) The separate-accrual rule therefore applies, and "each infringing act starts a new limitations period."[7] *Petrella*, 572 U.S. at 671; *Graham I*, 568 F.3d at 433. Accordingly, the Court will evaluate each allegedly infringing act separately to determine if the Complaint's infringement claims were timely filed.

Plaintiff first alleges an adjunct professor employed by NJIT taught CS 675 using Plaintiff's unique course material in the spring semester of 2020, and that he discovered the professor had copied the CS 675 course material without his consent around February 17, 2020. (ECF No. 5 ¶ 33; ECF No. 5-2, Ex. N.) Specifically, the Complaint acknowledges Plaintiff "asked the university administration for relief and *expressed copyright concerns* when he noticed that an adjunct was using his course material word for word" (ECF No. 5 ¶ 33 (emphasis added).) Plaintiff's raising of potential copyright concerns shows he had discovered the injury forming the

---

[7] Further, NJIT's argument is in direct conflict with *Graham I*, where the Third Circuit explicitly rejected the idea that "a copyright owner has a duty to investigate infringement 'in the offing[.]'" *Graham I*, 568 F.3d at 438–39; *see also Brownstein v. Lindsay*, 742 F.3d 55, 70 (3d Cir. 2014) ("The discovery rule also holds that the clock only starts running once a cause of action arises since a plaintiff cannot experience storm warnings of a violation until his rights have been violated. Consequently, prospective plaintiffs have no duty to investigate future causes of action." (internal citations omitted)). Here, Plaintiff pleads he did not have a reason to suspect NJIT would task Koutis with developing an online version of CS 675 from his copyrighted materials based on the adjunct professor's 2020 instance of CS 675, and that NJIT representatives had assured him in the February 2020 Email it would be a "violation of copyright law to copy another professor's course without permission." (ECF No. 5 ¶ 33.) To the extent NJIT argues the 2020 class constituted a "storm warning" preceding the development of DS 675, this is its burden to demonstrate, and is an argument not properly before the Court on a motion to dismiss. *Graham I*, 568 F.3d at 438 (noting on post-verdict appeal that defendants "bear the burden of demonstrating" plaintiff "had sufficient information of possible wrongdoing to place [it] on inquiry notice or to excite storm warnings of culpable activity" and reversing district court's summary judgment determination sufficient storm warnings of impending infringement existed prior to actual acts of infringement).

basis of a potential infringement claim, triggering the statute of limitations. *See Graham I*, 568 F.3d at 438; *Raucci*, 145 F. Supp. 3d at 449. Therefore, the latest Plaintiff could timely bring a claim regarding this unauthorized use of his CS 675 course materials is February 17, 2023, over a year before he filed the Complaint. To the extent Plaintiff alleges infringement based on the adjunct professor's 2020 use of his copyrighted course materials, such a claim is time-barred.

Plaintiff also alleges NJIT tasked Koutis with creating DS 675 sometime during Plaintiff's September 2021 Leave. (ECF No. 5 ¶¶ 4, 10, 31.) However, Plaintiff alleges he was not aware of the potential infringement until February 13, 2024, when he offered to teach DS 675 and was told Koutis was responsible for creating that course. (*Id.* ¶ 25; ECF No. 5-2, Exs. I & D.) Accepting Plaintiff's allegations as true, the statute of limitations would not begin to run until February 13, 2024, and the Complaint was timely filed on December 5, 2024. *See, e.g.*, *Live Face on Web, LLC v. Smart Move Search, Inc.*, Civ. A. No. 15-4198, 2017 WL 1064664, at *2 (D.N.J. Mar. 21, 2017) (denying motion to dismiss where plaintiff alleged filing suit within a year of discovering infringement because "at the motion to dismiss stage, the Court cannot foreclose this argument in favor of the defense"); *Petrella*, 572 U.S. at 671. While NJIT may argue Plaintiff should have uncovered the alleged infringement during his September 2021 Leave, this at best creates a dispute of fact the Court cannot resolve at the pleading stage. *See Raucci*, 145 F. Supp. 3d at 450 ("Because there is a factual dispute whether the limitations period was tolled, we also shall not dismiss Raucci's claims relating to violations [three years before the date of filing] as time-barred.").

### C. Copyright Infringement

The two elements of a copyright infringement claim are: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). "[C]opying is demonstrated when someone

19

who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). "[T]he fact-finder is to determine whether a 'lay-observer' would believe that the copying was of protectible aspects of the copyrighted work." *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 554 (3d Cir. 2002) (quoting *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986)).

NJIT contends Plaintiff has failed to adequately plead copyright infringement for a variety of reasons: (1) Plaintiff's claim is not properly before the Court because he does not identify or provide the "totality" of the copyrighted work or the allegedly infringing one; (2) Plaintiff does not adequately allege a direct copyright claim against NJIT; (3) Plaintiff "fails to allege actual copying or material appropriation of any protected expression"; and (4) any material copying constituted fair use for educational purposes. (ECF No. 17-1 at 16–36.)

### 1. NJIT's Formalist Arguments (Identifying the "Totality" of Works and Direct Infringement)

First, NJIT argues Plaintiff has not identified "the totality of the specific, original work that allegedly was copied" because he did not attach "the actual deposit copy" that accompanied his copyright application "and a complete copy of the allegedly infringing work," therefore preventing a factfinder from doing the necessary comparison to evaluate infringement. (*Id.* at 16–17.) In his opposition, Plaintiff points to Exhibit H of the Complaint, which he contends is a summary of "the infringed material" in the DS 675 course materials and attaches "the full exact material that was submitted for registration" to the Copyright Office. (ECF No. 19 at 11 (citing ECF Nos. 5-2, Ex. H, 19-1, Ex. D).) In its reply, NJIT contends the Court cannot consider "the supposed deposit copy" of the work attached to Plaintiff's opposition, but argues it is a moot point because Plaintiff "has never identified and provided a complete copy of the infringing work," the DS 657 syllabus

and course materials, instead providing only "his cherry-picked, side-by-side comparisons of portions of syllabi, presentations and exam questions." (ECF No. 20 at 9–10.)

"When considering a copyright infringement claim on a motion to dismiss, courts may consider evidence extrinsic to the complaint that is integral to the suit—namely, the copyrighted and allegedly infringing works." *Dellamorte, LLC v. Michaels Companies, Inc.*, Civ. A. No. 21-2029, 2022 WL 254427, at *2 (D.N.J. Jan. 27, 2022) (citing *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018)). As a result, the Court is not concerned that Plaintiff provided the deposit copy as an exhibit to his Opposition, rather than to the Complaint.

NJIT oversteps in arguing Plaintiff's failure to include a complete copy of the allegedly infringing works requires dismissal. Indeed, "it is no longer necessary that either a copy of the work allegedly infringed, or a copy of the allegedly infringing work, accompany the complaint." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.09[B] (Matthew Bender, Rev. Ed.). While the Third Circuit permits district courts to evaluate substantial similarity at the pleading stage based on visual comparison of the works because "no discovery or fact-finding is typically necessary," *Tanksley*, 902 F.3d at 172 (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)), it is often neither practical[8] nor necessary for a court to review the entirety of an allegedly infringing work at the pleading stage, particularly

---

[8] Copyrighted works may be physical objects or audiovisual works that, as a practical matter, cannot be physically "attached" to a complaint, yet federal courts manage to evaluate related claims. *See, e.g.*, *Masquerade*, 912 F.2d at 668 (evaluating copyrightability of "nose masks"); *Tanksley*, 902 F.3d at 172 (evaluating potential infringement of television series); *Bright v. Friedenberg*, Civ. A. No. 98-3546, 1999 WL 89716, at *1 (E.D. Pa. Jan. 11, 1999) (evaluating potential infringement of sculpture); *Cianelli v. Nourison Indus., Inc.*, Civ. A. No. 3:19-19147, 2020 WL 4882500, at *5–6 (D.N.J. Aug. 20, 2020) (evaluating potential infringement of paintings); *Dellamorte, LLC v. Michaels Companies, Inc.*, Civ. A. No. 21-2029, 2022 WL 254427, at *4–5 (D.N.J. Jan. 27, 2022) (determining aspects of plaintiff's "Vampire Bat Mug" design were copyrightable and plaintiff stated plausible claim of infringement).

when the plaintiff indicates what he or she claims constitutes substantial similarity, *see id.* (affirming district court's dismissal for lack of substantial similarity between copyrighted three-episode television series and allegedly infringing television series where "complaint [did] not have recordings of either show formally attached as an exhibit, but it include[d] dozens of side-by-side screenshots" and parties played excerpts from shows at oral argument); *Bright*, 1999 WL 89716 at *1 (denying motion to dismiss after determining, from review of photocopied images of copyrighted and allegedly infringing sculptures, it could not find "that *no* reasonable fact-finder could conclude that the sculptures are substantially similar"); *Cianelli*, 2020 WL 4882500, at *5–6 (denying request to amend copyright infringement claims after comparing images of copyrighted paintings with photos of allegedly infringing rugs). Therefore, there is no formalistic bar to Plaintiff's claim based on how the allegedly infringing work was presented in the Complaint and accompanying exhibits if Plaintiff provides enough detail to enable the Court "to determine whether Defendan[t] infringed upon a valid copyright." *Marina Grp. LLC v. Shirley May Int'l US Inc.*, Civ. A. No. 2:21-18733, 2022 WL 17622679, at *6 (D.N.J. Dec. 13, 2022) (dismissing copyright claim because plaintiff "failed to identify what copyrighted material Defendants allegedly copied, reproduced or expropriated"). Since Plaintiff describes the alleged similarities between the CS 675 and DS 675 course materials in the Complaint and includes excerpts of the DS 675 materials in Exhibit H of the Complaint, the Court can evaluate the strength of Plaintiff's claim at the pleading stage. (ECF Nos. 5 ¶¶ 12–23, 5-2.)

Next, NJIT asserts Plaintiff does not allege "a claim for direct copyright infringement against" it because "he alleges no facts to support that NJIT directed or participated in any purported copying of the CS 675 Machine Learning syllabus and course materials" or otherwise knew the DS 675 course materials copied the CS 675 course materials. (ECF No. 17-1 at 19.) NJIT

argues the fact that it offered DS 675 to its students does not change the equation, and the allegations Plaintiff makes toward Koutis (who is not referred to by name in the Complaint) do not put NJIT on notice of "the nature of the claims." (*Id.* at 19–21 (quoting *Twombly*, 550 U.S. at 574).) In response, Plaintiff contends the individuals involved in the appropriation of the CS 675 course materials were "employed and paid personnel of NJIT [as] faculty and administrators," and Koutis was tasked by the Dean of YWCC, Gotsman, to design DS 675 based on the "approved syllabus" for CS 675. (ECF No. 19 at 12, 15.) Plaintiff also argues NJIT is the entity that stands to benefit financially from its employees' infringement of Plaintiff's copyright because DS 675's enrollment brings increased revenue and reach to the university. (*Id.* at 12–15.) NJIT contends Plaintiff's arguments represent new theories of liability and constitute "wild conjecture" as to NJIT's involvement that do not support "a reasonable inference that NJIT directed or participated in any purported copying of the CS 675 . . . course materials" or had "contemporaneous knowledge" DS 675 copied them. (ECF No. 20 at 8–9.)

"[T]o state a direct copyright infringement claim, a plaintiff must allege volitional conduct on the part of the defendant." *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007). "The volitional conduct inquiry seeks to determine whether the defendant caused the copyrighted material to be infringed." *Tom Hussey Photography, LLC v. BDG Media, Inc.*, Civ. A. No. 20-404, 2020 WL 7481770, at *2 (D. Del. Dec. 18, 2020) (finding no claim for direct copyright infringement where defendant acquired website that had previously displayed plaintiff's copyrighted work); *see also Durant v. duPont Publ'g, Inc.*, Civ. A. No. 18-9794, 2019 WL 1433620, at *2 (D.N.J. Mar. 29, 2019) (finding direct infringement adequately alleged where defendant published third-party advertisement containing plaintiff's photograph on its website). Here, Plaintiff alleges NJIT: (1) "produced an online machine learning graduate course [(DS 675)]

23

that is almost identical to his" CS 675 course (ECF No. 5 ¶ 4); (2) purchased the DS 675 course from an NJIT faculty member (*id.* ¶ 10); and (3) was motivated to offer CS 675 "as the very first course to offer in their online program . . . to a large online audience to increase revenue" (*id.* ¶ 32). Additionally, Plaintiff alleges Koutis explained that DS 675, "the official online CS675," was developed from the "approved syllabus" for CS 675 as directed by the Dean of YWCC, a division of NJIT.[9] (*Id.* ¶ 31.) At this stage, these allegations are sufficient to allege NJIT took action to cause infringement. *See Durant*, 2019 WL 1433620 at *2.

### 2. Substantial Similarity

NJIT attacks the substance of Plaintiff's allegations, arguing he fails to allege actual copying or material appropriation of any protected expression. (ECF No. 17-1 at 21.) Noting the Third Circuit has cautioned against conflating the "substantial similarity" evaluations for actual copying (which does not consider whether the similarities are material) and material appropriation (which does), NJIT contends all unprotectable elements of CS 675 must be excluded from the analysis. (*Id.* at 21–23 (quoting *Tanksley*, 902 F.3d at 173–174).)

NJIT asserts unprotectable elements are those "that are so utilitarian and essential to an idea that expression of them cannot be copyrighted" and argues "[t]he vast majority of the CS 675 Machine Learning syllabus and course materials consist of unprotected basic scientific subjects,

---

[9] NJIT protests that Plaintiff identifies Koutis and Gotsman as involved in the alleged copyright infringement for the first time in his opposition. (ECF No. 20 at 8.) As discussed *supra* Section I.A, considering Plaintiff is *pro se*, the Court forgives his failure to identify either party clearly because both appear in the Complaint, albeit obliquely. Koutis and Gotsman are referenced in the Complaint, Koutis as the "faculty member" (ECF No. 5 ¶¶ 10, 13, 20, 25–26, 29–31) or, in one case, "Yiannis" (an alternative spelling of Koutis's first name) (*id.* ¶ 25), and Gotsman as "Craig" (*id.* ¶ 31). Several of Plaintiff's allegations discussing the "faculty member" refer to emails attached as exhibits, where Koutis's name appears. (*Id.* ¶¶ 25, 29–31.) The Complaint also refers to Plaintiff's attempts to discuss this matter with "the former Interim YWCC Dean, the new and current YWCC Dean," one of whom the Court presumes is Gotsman. (*Id.* ¶ 34.) However, the Court does not consider any facts about these individuals Plaintiff did not allege in the Complaint.

concepts and ideas for an introductory course in machine learning[.]" (*Id.* at 23 (citing *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986); *Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014)).) Because machine learning is "a subset of artificial intelligence ("AI") employing basic formulas and algorithms that 'teach' computers to learn and improve from experience," NJIT argues Plaintiff's CS 675 course materials are merely "ideas, procedures, processes, systems and methods of operation [that] are not protected by copyright law." (*Id.* at 23–24 (citing *Baker v. Selden*, 101 U.S. 99, 100–01 (1879)).) Specifically, NJIT contends Plaintiff's purportedly copyrighted materials include "generalized mathematical and technical topics" expressed through common words and phrases. (*Id.* at 25 (citing *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004); *Winstead v. Jackson*, Civ. A. No. 10-5783, 2011 WL 4407450, at *3 (D.N.J. Sept. 20, 2011)).) Because "the exact organization of the topics [in CS 675 and DS 675] depends on certain materials serving as a basis for other more advanced topics and constitutes a practical organization," NJIT asserts Plaintiff also cannot claim copyright over the sequencing of topics. (*Id.* at 26.) Therefore, NJIT contends the merger doctrine prevents Plaintiff from maintaining a copyright infringement claim, because "[t]he mathematical concepts and formulas," topics, modules, and figures in CS 675 "are merged with the underlying concepts and therefore are unprotectable as a matter of law." (*Id.* at 27.)

Having excluded these unprotectable elements, NJIT argues Plaintiff cannot establish substantial similarity rising to the level of material appropriation to survive the Motion. (*Id.*) NJIT contends "[a]ny lay observer . . . would find that the course topics are not similar in terms of titles or sequence, nor are the modules, figures, charts, graphs or formulas in the slides, lectures or exam questions presented in a similar form, layout or design." (*Id.* at 28.) NJIT contends Plaintiff fails to identify any "verbatim copying in any elements," and "not one sentence, graph or model is

'almost entirely identical' between the two works." (*Id.* (quoting ECF No. 1-2, Ex. H).) NJIT also argues Plaintiff's comparison of CS 675 and DS 675's lecture slides and notes shows "the lectures are neither presented in the same medium," nor are the slides "similar in terms of form, design or style[.]" (*Id.* at 29.) NJIT asserts the only non-protectable elements remaining are the assignments and exam problems between the two courses, but Plaintiff fails to demonstrate any are "paraphrased, let alone copied verbatim" and maintains that "a simple visual inspection of the various exam problems" demonstrates they lack similarities "in terms of form, design or styling or in terms of the substantive formulas or equations." (*Id.* at 29–30.) Moreover, NJIT argues Plaintiff cannot claim copyright protection over "the ability to derive test questions" from the unprotectable underlying concepts. (*Id.* at 30 (citing *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Stud., Inc.*, 458 F. Supp. 2d 252, 259 (E.D. Pa. 2006)).) Finally, NJIT asserts Plaintiff's references to syllabi from machine learning courses at other universities serve only to underscore that they all cover similar topics in a similar order as CS 675 and refute his claims of infringement. (*Id.* at 31–32.)

Plaintiff argues "[t]he idea and expression of machine learning instruction do not coincide," and the merger doctrine does not apply.[10] (ECF No. 19 at 16.) Plaintiff distinguishes *Baker* as "applying a copyrighted method in practice" or a patent, whereas Plaintiff asserts "his course has been copied in its entirety." (*Id.* at 18 (citing *Baker*, 101 U.S. at 100–01).) Plaintiff argues his course is "an original compilation" whose "arrangement and original selection of the topics . . . is protected by law," and the cases NJIT cites do not apply because "'the number of ways to organize this information in a useful and accessible manner' is not limited." (*Id.* at 18–19 (quoting *Matthew*

---

[10] Plaintiff contends the topics in CS 675 have a higher "Jaccard coefficient" of similarity with DS 675 than with the syllabi of courses at other universities. (ECF No. 19 at 16–17.) As NJIT notes, Plaintiff does not explain what a Jaccard coefficient measures (ECF No. 20 at 10), nor does this value appear in the Complaint. The Court will therefore not consider these values in its substantial similarity assessment.

*Bender & Co. v. Kluwer Law Book Publishers, Inc.*, 672 F. Supp. 107, 108–10 (S.D.N.Y. 1987)).) Contrary to NJIT's assertion, Plaintiff contends he "is not claiming copyright of the concepts or ideas but [rather] their expression" because there are "different ways to express" some of the core topics in machine learning, such as linear regression. (*Id.* at 19–20.)

Plaintiff illustrates this alleged similarity by listing topics from "some of the largest modules" in CS 675 and DS 675 and the similar order in which they appear and contrasting them with the syllabus of a Stanford University course on the same topics. (*Id.* at 20–31.) Within this breakdown, Plaintiff highlights certain topics for which he contends both CS 675 and DS 675 contain his "original intuition" or "expression," including CS 675's presentation of aspects of regularization, "Euclidean distance as dot products and its role in kernels," "transition from dual to hinge loss," "simple linear algebra to explain kernel PCA," and "LeNet architecture as a case study." (*Id.* at 22–35.) Plaintiff also identifies several CS 675 exam questions he claims DS 675 imitates in a substantially similar manner. (*Id.* at 32–35, 38–39.) In response to NJIT's argument that he has not shown substantial similarity of the protected elements because the lecture slides are in different media, Plaintiff argues "there is no exception to [copyright] infringement across mediums," such as a book to a movie. (*Id.* at 37.)

NJIT counters Plaintiff's comparative exercise is unavailing and demonstrates only that "no protected elements of [CS 675 were] copied by anyone, much less by NJIT." (ECF No. 20 at 9.) Further, NJIT asserts the twelve "original contributions" Plaintiff claims are common across CS 675 and DS 675 but absent from the Stanford course contain "a litany of mathematical principles, formulas, algorithms, or equations that specifically are not copyrightable." (*Id.* (citing 17 U.S.C. § 102(b); *Baker*, 101 U.S. at 103).) NJIT likewise argues Plaintiff's view that he holds

a copyright in "the selection and order of assignment topics" and his "choice of concepts to test" contravenes precedent. (*Id.* at 11 (citing *Nat'l Conf. of Bar Exam'rs*, 458 F. Supp. 2d at 259).)

To establish the second element of a copyright infringement claim, "unauthorized copying of original elements of the plaintiff's work," the plaintiff must show two components: "actual copying and material appropriation of the copyrighted work." *Tanksley*, 902 F.3d at 173 (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). "The conceptual distinction between actual copying and material appropriation is foundational to copyright law because not all instances of actual copying give rise to liability, and, conversely, without proof of actual copying the amount of similarity between two works is immaterial." *Id.* Because both actual copying and material appropriation are required to state a claim, they may be considered in either order. *See, e.g.*, *id.* (affirming dismissal for lack of material appropriation between copyrighted and allegedly infringing works and declining to address "the separate question of whether the complaint plausibly alleges actual copying").

"Actual copying occurs when the defendant used the plaintiff's work to create a plagiarized work" and can be demonstrated both directly and indirectly. *Grondin v. Fanatics, Inc.*, No. 23-2149, 2024 WL 5231194, at *1 (3d Cir. Dec. 27, 2024). Indirect evidence includes "circumstantial evidence in the form of [the defendant's] access to the work plus similarities 'probative' of copying." *Design With Friends, Inc v. Target Corp*, Civ. A. No. 1:21-01376, 2023 WL 3434013, at *2 (D. Del. May 12, 2023) (Bibas, J.) (quoting *Tanksley*, 902 F.3d at 173); *see also Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 395 (D. Del. 2025) (Bibas, J.) ("One can prove [actual copying] directly, with evidence that the defendant copied the work, or indirectly, by showing that the defendant had access to it and produced something similar[.]").

Material appropriation "asks whether the copyrighted aspects of the original work are sufficiently similar to the copyrighted aspects of the plagiarized work" from the perspective of a lay observer. *Grondin*, 2024 WL 5231194 at *2 (citing *Tanksley*, 902 F.3d at 174). To answer this question, courts engage in a two-step process: "*first*, courts distill the original work to only its copyrighted elements; *second*, they compare the distilled copyrighted work to the alleged plagiarized work." *Id.* In this "side-by-side comparison of the works," the court "exclude[es] any unprotectable elements[.]" *Tanksley*, 902 F.3d at 174. Although substantial similarity "is usually an extremely close question of fact," for which judicial resolution was traditionally disfavored, the Third Circuit has joined several other Courts of Appeals in concluding an infringement claim may be dismissed on the pleadings "where no reasonable juror could find substantial similarity[.]" *Id.* at 171–72 (quoting *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983)); *see also Peterson v. Goldin*, 747 F. Supp. 3d 714, 719 (D.N.J. 2024) ("[C]ourts will dismiss an infringement action if they conclude that no trier of fact could rationally determine the two works to be substantially similar." (citing *Tanksley*, 902 F.3d at 172)).

Although NJIT nominally asserts Plaintiff did not allege actual copying, its argument is entirely directed to material appropriation, and it does not address Plaintiff's allegations it had the motivation to copy the CS 675 materials, and Koutis had the access needed to do so. (ECF Nos. 17 at 21–32; 19 at 9–11; 5 ¶¶ 13, 32–33.) Therefore, the Court turns to the two-step material appropriation analysis.

### a. Protectable Material

As discussed *supra*, NJIT contends the vast majority, if not all, of Plaintiff's CS 675 course materials are "ideas, procedures, processes, systems and methods of operation [that] are not protected by copyright law" because they teach machine learning concepts, and any contribution

by Plaintiff is absorbed into the unprotectable material by the merger doctrine. (ECF No. 17-1 at 23–24 (citing *Baker*, 101 U.S. at 100–01; *Educ. Testing Servs.*, 793 F.2d at 539).) Although Plaintiff does not respond directly to NJIT's contention, he argues the course materials are protectable compilations. (ECF No. 19 at 18–19.)

"It is a fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005) (citing 17 U.S.C. § 102(b); *Baker*, 101 U.S. at 103–04; *Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 64–65 (3d Cir. 1978)). In the seminal case *Baker*, the Supreme Court illustrated the application of this principle to the publication of "mathematical science":

> The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires. The very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains. But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book. And where the art it teaches cannot be used without employing the methods and diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public; not given for the purpose of publication in other works explanatory of the art, but for the purpose of practical application.

101 U.S. at 103. "When determining whether two works are substantially similar, a fact-finder must determine whether the later work is similar because it appropriates the unique expressions of the original author, or merely because it contains elements that would be expected when two works express the same idea or explore the same theme." *Kay Berry*, 421 F.3d at 208.

In applying this precept, courts in this Circuit have embraced the view that "[t]he less protectable expression a work contains, the more similar the allegedly infringing work must be to it." *Thomson Reuters*, 765 F. Supp. 3d at 396 (finding substantial similarity between copyrighted

and allegedly infringing case headnotes where copyrighted "language very closely tracks the language of [infringing works] but not the language of the case opinion" and granting summary judgment in those instances); *see also Kay Berry*, 421 F.3d at 208–09 ("Because an author can only demonstrate substantial similarity by referencing those aspects of his work that embody his creative contribution, he will have a more difficult time proving infringement if his work contains only a minimal amount of original expression."); *Schiffer Pub., Ltd. v. Chron. Books, LLC*, Civ. A. No. 03-4962, 2004 WL 2583817, at *9 (E.D. Pa. Nov. 12, 2004) ("It follows that the less originality inherent in the underlying work, the closer the copy must be to the underlying work for the copying to be actionable.").

"In some instances, there may come a point when an author's expression becomes indistinguishable from the idea he seeks to convey, such that the two merge." *Kay Berry*, 421 F.3d at 209 (citing *Educ. Testing Servs.*, 793 F.2d at 539); *accord Mortg. Mkt.*, 2008 WL 2991570 at *35 ("[W]hen an idea and its expression are indistinguishable, or 'merged,' the expression will only be protected against nearly identical copying" (citations omitted)) (finding "selection and arrangement of . . . financial analysis tools" in "unique and customizable way" was copyrightable, even though the form of some tools could not be separated from their function). The "merger" rule "has its greatest force in the analysis of utilitarian or 'functional' works." *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1236–39 (3d Cir. 1986) (holding copyright protections apply to computer programs that serve to express ideas); *see also Grondin*, 2024 WL 5231194 at *3 ("An aspect of a work is 'utilitarian' within the meaning of copyright law so long as it is 'intrinsically useful' for the realization of an idea." (quoting *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 221 (3d Cir. 2019))). The Third Circuit has found the merger rule not to apply to exam questions because they "do not represent the only means of expressing the ideas"

31

upon which the creator seeks to test students. *Educ. Testing Servs.*, 793 F.2d at 540 ("Although [plaintiff] cannot appropriate concepts such as rules of punctuation, analogies, vocabulary or other fundamental elements of English composition, it can . . . devise questions designed to test these concepts and secure valid copyrights . . . . Other persons, similarly resourceful, have ample latitude and opportunity to frame noninfringing questions testing the same subjects.").

The Court has reviewed Plaintiff's CS 675 course materials as described in the Complaint and included in Exhibit H, which primarily consist of Plaintiff's syllabus, lecture slides, and exam problems, as well as attached to Plaintiff's Opposition as Exhibit D.[11] (ECF Nos. 5 ¶¶ 14–21; 5-2, Ex. H; 19-1, Ex. D.) Regarding the CS 675 syllabus, Plaintiff's infringement claim focuses on the fact that DS 675 allegedly taught the same topics in the same order. (ECF No. 5 ¶ 19.) However, the Court finds the collection of topics in the syllabus—such as "Bayesian learning," "Python," and "Logistic regression" (ECF No. 19-1, Ex. D)—is simply a list of noncopyrightable ideas whose expression through the particular words chosen is functionally merged with and "indistinguishable" from them. *Kay Berry*, 421 F.3d at 209. As pled, this is not a case where the order and selection of topics is a "unique expression" not previously applied to the teaching of machine learning, *Mortg. Mkt.*, 2008 WL 2991570 at *35; as NJIT points out, and CS 675's formal title, "Introduction to Machine Learning," implies, these are foundational topics likely to be covered in any introductory machine learning course and in a similar order, albeit with some variation among professors and universities (ECF Nos. 17 at 26; 19-1, Ex. D). *See also Matthew Bender*, 672 F. Supp. at 110 (finding chart for compiling settlement and award data in cases not

---

[11] Because Plaintiff's allegations are closely tied to the comparison between CS 675 and DS 675, the Court focuses its analysis on those aspects of CS 675 Plaintiff alleges DS 675 infringes. *See Grondin*, 2024 WL 5231194 at *3 (affirming dismissal of infringement claim after separating out protectable and unprotectable elements of work and discovering "[plaintiff] has not identified any copyrighted aspect of [work] upon which [defendant's] product allegedly infringes").

protectable, even though "in theory there are numerous ways to place this information," because "the number of ways to organize this information in a useful and accessible manner is limited"). Moreover, Plaintiff's comparison with syllabi from Stanford University, New York University, and Columbia University shows overlapping topics such as "regularization," "logistic regression," "Python," "Bayesian learning [or regression]," and "decision trees." (ECF No. 5-2, Ex. H.) The Court accordingly finds the CS 675 syllabus contains no protectable expression.

Most of Plaintiff's lecture slides are a collection of mathematical formulas and computer programming script related to the concepts he is teaching, accompanied by a small amount of explanatory text, graphs, and/or diagrams. (ECF No. 5-2, Ex. H.) By their nature, the mathematical formulas Plaintiff includes are "necessary incidents to the art" of machine learning and not copyrightable. *Baker*, 101 U.S. at 103; *see also Ho v. Taflove*, 696 F. Supp. 2d 950, 954 (N.D. Ill. 2010) (finding mathematical mode expressed in series of equations uncopyrightable concept or idea subject to merger doctrine "because there are so few ways of mathematically expressing [it]"), *aff'd sub nom. Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011). Although CS 675 and DS 675 both seek to teach machine learning, rather than employ it, the principle still applies, as there are limited ways to express these ideas mathematically. *See id.* Similarly, many of the figures in the CS 675 slides are graphical or visual expressions of mathematical formulas or concepts which can only be depicted one way and are not copyrightable.[12] (ECF No. 5-2, Ex. H; ECF No. 19-1, Ex. D.) Plaintiff effectively admits these unprotectable elements are what he seeks to protect through his copyright, stating in Exhibit H that "[w]e see the same formulas, same figures, and same ideas [in CS 675] are presented in [DS 675]." (ECF No. 5-2, Ex. H.)

---

[12] The Court further notes Plaintiff's slides disclose some of the included figures are "[c]ourtesy of Wikipedia," undermining his stance they are his original expression. (ECF No. 19-1, Ex. D.)

However, some of Plaintiff's slides contain written explanations of how the formulas or theorems function. For example, the presentation for Module 13 of CS 675 contains a slide entitled "PCA via SVD," which consists of a written description of "the eigenvector decomposition theorem." (*Id.*) The Court finds a "trier of fact could rationally determine" these textual explanations constitute protectable expressions. *Design with Friends*, 2023 WL 3434013 at *2 (quoting *Tanksley*, 902 F.3d at 172); *Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC*, Civ. A. No. 05-8665, 2008 WL 4449412, at *6–7 (S.D.N.Y. Sept. 30, 2008) (rejecting argument test prep materials and practice questions were not copyrightable "[b]ecause defendants have not shown that a reasonable jury would be precluded from" finding them protectable). However, there are a limited number of ways to describe these mathematical functions, and DS 675 therefore will be substantially similar only if it hews very closely to the words used. *See Thomson Reuters*, 765 F. Supp. 3d at 396; *Kay Berry*, 421 F.3d at 208–09; *Schiffer Pub.*, 2004 WL 2583817 at *9. To the extent Plaintiff claims all the lecture slides (those merely presenting formulas and figures and those containing explanatory text) represents a compilation, the same limitation will apply. *See id.*

The last aspect of Plaintiff's CS 675 materials he alleges was appropriated is his assignments and exam questions. (ECF Nos. 5 ¶¶ 13, 19; 5-2, Ex. H.) As this Circuit and other federal courts have recognized, specific assignments, surveys, and exam problems are protectable expression. *See Educ. Testing Servs.*, 793 F.2d at 540; *Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 626, 635 (8th Cir. 1989) (finding "test statements" used to assess clinical patients for psychological symptoms were sufficiently original for copyright protection and collecting cases finding particular questions and tests copyrightable); *Gallup, Inc. v. Talentpoint, Inc.*, Civ. A. No. 00-5523, 2001 WL 1450592, at *7 (E.D. Pa. Nov. 13, 2001) ( "[T]he number of questions that can be formulated to survey employee engagement [does not] represent a merger to

34

the underlying idea."). As such, Plaintiff's original expression for the purpose of testing students on machine learning concepts and their application is copyrightable.

### b. Substantial Similarity

Having identified the protectable aspects of Plaintiff's copyright in the CS 675 course materials—the written explanations contained in his lecture slides (possibly in compilation with the whole of the slides themselves) and his assignments and exam problems—the Court "performs a side-by-side comparison of the works[.]" *Tanksley*, 902 F.3d at 174. If "no trier of fact could rationally determine the two [works] to be substantially similar," the Court may dismiss the action at the pleading stage. *Design with Friends*, 2023 WL 3434013 at *2 (alteration in original) (quoting *id.* at 172). The Court considers substantial similarity from the perspective of a lay observer, *i.e.*, "whether an ordinary user of a product would find it substantially similar to the copyrighted work." *Thomson Reuters*, 765 F. Supp. at 395; *see also Grondin*, 2024 WL 5231194 at *2 ("Two works are said to be 'substantially similar' if 'a "lay-observer" would believe that the copying was of protectable aspects of the copyrighted work.'" (quoting *Dam Things*, 290 F.3d at 562)).

The Court concludes no rational jury could find the protectable aspects of CS 675 are substantially similar to the allegedly infringing aspects of DS 675. *See Tanksley*, 902 F.3d at 174; *Thomson Reuters*, 765 F. Supp. at 395; *Grondin*, 2024 WL 5231194 at *2. Plaintiff's side-by-side comparison of the DS 675 lecture slides, assignments, and exam questions he alleges infringe CS 675 are not recognizably similar, much less highly similar as is necessary when the "originality inherent in the underlying work" is limited. *Schiffer Pub.*, 2004 WL 2583817 at *9. Where CS 675 explains concepts in written summaries of bulleted text (such as in Modules 1–3, 5–8, 10–16, and 22), DS 675 explains those concepts primarily or entirely in formulas and/or figures. (ECF No. 5-2, Ex. H.) Plaintiff does not point to, nor has the Court identified, any instances where the DS 675

slides parrot or even paraphrase the CS 675 slides. (*Id.*) Although it is clear DS 675 teaches the same or related concepts as CS 675, the lecture slides indicate only the similarity expected "when two works express the same idea or explore the same theme." *Kay Berry*, 421 F.3d at 208. Viewing CS 675 as a compilation does not remedy this problem, as it is evident DS 675 is not a carbon copy of the organization of its constituent parts. *See Mortg. Mkt.*, 2008 WL 2991570 at *35.

The same is true of Plaintiff's assignments and exam problems as compared to DS 675. (ECF No. 5-2, Ex. H.) While many of the questions Plaintiff identifies from DS 675 test the same concepts as CS 675 questions, they are dissimilar in format (for examples, open-ended versus multiple-choice; single questions versus questions with multiple sub-parts), language, and images. (*Id.*) Plaintiff "cannot appropriate concepts" and thereby prevent "[o]ther persons . . . [from] fram[ing] noninfringing questions testing the same subjects." *Educ. Testing Servs.*, 793 F.2d at 540; *see also Nat'l Bd. of Med. Examiners v. Optima Univ. LLC*, Civ. A. No. 1:09-01043, 2011 WL 7615071, at *7 (W.D. Tenn. Sept. 29, 2011) (concluding exam questions in dispute were substantially similar to copyrighted questions where defendants "did not simply attempt to test the same scientific and medical principles as" plaintiff but copied "exact questions and methods of assessing an examinee's knowledge of science and medicine").

Because no trier of fact could rationally find the CS 675 course materials are substantially similar to the DS 675 course materials, Plaintiff's infringement claim fails and must be dismissed. *See Tanksley*, 902 F.3d at 174. Courts in this Circuit have dismissed infringement claims with prejudice when they determine there is no substantial similarity, and the Third Circuit has affirmed such dismissals; accordingly, this Court will do the same. *See id.* at 177 ("Finally, we will affirm the District Court's determination that further amendment to the complaint would have been futile."); *Grondin*, 2024 WL 5231194 at *4 (affirming dismissal with prejudice); *Walker v. Kemp*,

587 F. Supp. 3d 232, 248 (E.D. Pa. 2022) (denying leave to amend complaint because "the works are not substantially similar, and no amount of artful pleading will change that fact"); *accord Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 341 (3d Cir. 2022) (vacating injunction and remanding to district court "with instruction to dismiss with prejudice" infringement claim after determining allegedly infringed aspects of work were not copyrightable).

### D.  Concealment of Infringement and Willful Criminal Infringement

NJIT challenges Plaintiff's claims for concealment of infringement and willful criminal infringement as not actionable, the former because it is not an independent cause of action and not adequately pled, and the latter because Plaintiff cannot initiate a criminal action. (ECF No. 17-1 at 36–37.) While the Court is skeptical these causes of action are available as a general matter, both concealment of infringement and willful criminal infringement are premised on the existence of a viable copyright infringement claim (as their names suggest). This Court has determined Plaintiff cannot state such a claim, so, to the extent concealment of infringement and willful criminal infringement claims are available, they also fail and must be dismissed.

### IV.  CONCLUSION

For the reasons set forth above, and for good cause having been shown, NJIT's Motion to Dismiss Plaintiff's Complaint (ECF No. 17) is **GRANTED**, and the Complaint (ECF No. 5) is **DISMISSED WITH PREJUDICE**. An appropriate order follows.


Dated:  August 27, 2025                    */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**